UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

LARRY J. BUTLER,

        Plaintiff,

v.                                Case No:   2:19-cv-331-JLB-MRM

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.

_____

## ORDER

The Court dismissed pro se Plaintiff Larry Butler's Second Amended Complaint for failure to state a claim and as a shotgun pleading.   (Doc. 58.)   As it had previously, the Court provided Mr. Butler with instructions on how to remedy his pleading.   (Id.; see also Docs. 19, 21, 32, 34.)   But the Commissioner of Social Security moves to dismiss the Third Amended Complaint, arguing it suffers from the same deficiencies.   (Doc. 60.)   The Court agrees.   And because Mr. Butler was expressly warned that no further amended complaints would be permitted (Doc. 58 at 13), this case is **DISMISSED**.

## BACKGROUND

As best the Court can tell from this iteration, Mr. Butler began working as an Administrative Law Judge ("ALJ") for the Social Security Administration ("SSA") in 1996.   (Doc. 59 at ¶¶ 4, 6.)   He developed respiratory ailments after the SSA began extensive remodelling of its Fort Myers Hearing Office where Mr. Butler worked. (Id. at ¶¶ 13–18.)   Mr. Butler required respiratory therapy and medication to

control his symptoms.   (Id. at ¶¶ 18, 56–57.)   On September 23, 2016, Mr. Butler submitted a reasonable accommodation request to work from home given that his ailments were "directly related to a hazardous work environment at the Fort Myers Hearing Office."   (Id. at ¶ 29.)   That same day, ALJ Duane Young informed Mr. Butler that his request had been "forwarded to Atlanta" for processing but that Mr. Butler was temporarily authorized to telework through October 4, 2016 given his medical condition.   (Id. at ¶ 30.)

Even so, Mr. Butler alleges that he "invoked the mandatory Informal Stage of the EEOC complaint process" on November 29, 2016 because SSA managers "had not responded to Plaintiff's September 23, 2016 Reasonable Accommodation request."   (Id. at ¶ 34.)   "By December 21, 2016," Mr. Butler "had clarified" that his reasonable accommodation request "included a request" that a decision writer assist him with "processing" his workload.   (Id. at ¶ 66.)   But Mr. Butler's superiors also began issuing him "Directives" that "disadvantaged the Plaintiff including, the repeated issuance of Directives to schedule additional hearings when Plaintiff was not deficient in that regard."   (Id. at ¶ 92.)[1]   On January 27, 2017, Mr. Butler "prepared an EEOC Initial Interview Summary which described Plaintiff's EEOC Complaints related to disability discrimination, failure to grant reasonable accommodation . . . , illegal reprisal and retaliation, harassment, and creation of a hostile work environment."   (Id. at ¶ 37.)   Mr. Butler filed "an EEOC

---

[1] Mr. Butler's pleading seems to contain a typographical error in stating the first "Directive" was issued December 21, 2015.   (Doc. 59 at ¶ 92.)   Elsewhere, he claims the first Directive was issued on December 21, 2016.   (Id. at ¶ 167.)

Formal Complaint" on March 13, 2017.   (<u>Id.</u> at ¶ 41.)   On May 3, 2017, a complaint was filed with the Merit Systems Protections Board ("MSPB") seeking Mr. Butler's removal as an ALJ.   (<u>Id.</u> at ¶ 158.)   Mr. Butler was placed on administrative leave and "remains in Administrative Leave status" at the time of filing the operative pleading.   (<u>Id.</u> at ¶ 160.)

Mr. Butler raises three claims in his pleading.   Count I is titled "Failure to Provide Reasonable Accommodation (RA)."   (Doc. 59 at 3.)   Count II reads "Retaliatory Hostile Work Environment (HWE)."   (<u>Id.</u> at 19.)   And Count III is styled "Retaliation (Discrete)."   (<u>Id.</u> at 26.)   All in all, Mr. Butler's Third Amended Complaint is 44 pages long and spans some 184 paragraphs.   (<u>See</u> Doc. 59.)   The Commissioner moves to dismiss, arguing Mr. Butler has once more violated Federal Rule of Civil Procedure 8 and 10 by not including a short and plain statement of his claims or presenting them in a concise manner.   (Doc. 60 at 3.)   Alternatively, the Commissioner argues Mr. Butler's conclusory allegations fail to state a claim.   (<u>Id.</u> at 4–17.)

## LEGAL STANDARD

"At the motion to dismiss stage, all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff."   <u>Bryant v. Avado Brands, Inc.</u>, 187 F.3d 1271, 1273 n.1 (11th Cir. 1999) (citation omitted).   A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."   Fed. R. Civ. P. 8(a)(2). Under this standard, the complaint "must contain sufficient factual matter,

accepted as true, to 'state a claim to relief that is plausible on its face.'" <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)).   "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."   <u>Id.</u> at 678.

## DISCUSSION[2]

To begin, the Court appreciates Mr. Butler's efforts in streamlining his pleading—he has reduced his allegations from 112 pages and more than 400 paragraphs to 44 pages and 184 paragraphs.   (<u>Compare</u> Doc. 55 <u>with</u> Doc. 59.) Nonetheless, the pleading still fails to include "a short and plain statement of [his] claim[s]" in a "simple, concise, and direct" manner.   (Doc. 58 at 6); Fed. R. Civ. P. 8(a), (d); <u>Carvel v. Godley</u>, 404 F. App'x 359, 360 & n.2 (11th Cir. 2010).   It remains "a mostly incoherent document containing duplicative, inconsistent, and wholly conclusory allegations . . . ."   <u>Vibe Micro, Inc. v. Shabanets</u>, 878 F.3d 1291, 1294 (11th Cir. 2018).   Accordingly, Mr. Butler cannot be allowed to proceed on his operative pleading.

---

[2] Mr. Butler is proceeding <u>pro se</u>.   "A document filed <u>pro se</u> is to be liberally construed, and a <u>pro se</u> complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers."   <u>Erickson v. Pardus</u>, 551 U.S. 89, 94 (2007) (quoting <u>Estelle v. Gamble</u>, 429 U.S. 97, 106 (1976)). Even so, the Supreme Court has "never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel."   <u>McNeil v. United States</u>, 508 U.S. 106, 113 (1993); <u>Moon v. Newsome</u>, 863 F.2d 835, 837 (11th Cir. 1989) (<u>pro se</u> litigants "subject to the relevant law and rules of court, including the Federal Rules of Civil Procedure").

I.    **Count I**

Count I is Mr. Butler's reasonable accommodation claim.   (Doc. 59 at 3–19.)
He must therefore allege, among other things, that "he was discriminated against
because of his disability."   Palmer v. McDonald, 624 F. App'x 699, 705–706 (11th
Cir. 2015) (citing Lucas v. W.W. Grainger, Inc., 257 F.3d 1249, 1255 (11th Cir.
2001)).   "[A] qualified individual is unlawfully discriminated against if the
employer does not make reasonable accommodations for the disability."   Knowles v.
Sheriff, 460 F. App'x 833, 835 (11th Cir. 2012) (citing 42 U.S.C. § 12112(b)(5)(A)).
Accepting the well-pleaded factual allegations as true and drawing all reasonable
inferences in his favor, Mr. Butler fails to state a claim for at least one main
reason—he fails to allege that he was denied a reasonable accommodation.

He explains he requested to telework from home on September 23, 2016 after
succumbing to respiratory issues "directly related to a hazardous work environment
at the Fort Myers Hearing Office."   (Doc. 59 at ¶¶ 29–30.)   But he also quotes an
email from that very same day stating that "[d]ue to your current medical condition,
temporary liberal telework is authorized through [October 2016]."   (Id. at ¶ 30.)
Later, he states that he invoked the EEOC complaint process in November 2016
because the SSA "had not responded to Plaintiff's . . . request."   (Id. at ¶ 34.)   Still
elsewhere, he alleges he experienced a "continuing pattern of unlawful refusal . . . to
grant Plaintiff's Reasonable Accommodation requests—that unlawful refusal
constituting illegal retaliation and conduct contributing to the creation of a hostile
work environment."   (Id. at ¶¶ 96, 144.)

Importantly, nowhere in his pleading does Mr. Butler allege this temporary authorization was revoked or that he was forced to return to the Fort Myers office after October.   Though perhaps his request was never denied because he also claims that the SSA in fact "never approved or denied Plaintiff's [reasonable accommodation] requests."   (Id. at ¶ 71.)   Suffice it to say, Mr. Butler has not plausibly alleged that he suffered discrimination by way of his reasonable accommodation request being denied.   Further, Mr. Butler's threadbare allegations fail to "give[] the [Commissioner] adequate notice of the claims against [her] and the grounds upon which each claim rests."   Weiland v. Palm Beach Cnty., 792 F.3d 1313, 1323 (11th Cir. 2015).[3]

## II.   Count II

In Count II, Mr. Butler maintains he was retaliated against for "his membership in [a protected class of disabled individuals] by the failure of [the SSA] . . . to process Plaintiff's EEO complaints and his requests for Reasonable Accommodation."   (Doc. 59 at ¶¶ 89–90.)[4]   He also claims that he "was subjected to

---

[3] That Mr. Butler also requested an SSA decision writer or agency attorney to assist him with his caseload does not change the Court's analysis.   (Doc. 59 at ¶ 66.)   There are no allegations connecting that request to Mr. Butler's medical disability requiring him to telework from home.   In fact, Mr. Butler's response asserts that "[t]here is no requirement that a request for temporary assistance as a Reasonable Accommodation be solely related to medical considerations . . . ." (Doc. 61 at 12.)   "It is not enough for a plaintiff to demonstrate that an adverse employment action was based partly on his disability; rather, the plaintiff must prove that he suffered an adverse employment action 'solely by reason of' his disability."   Palmer, 624 F. App'x at 705 (quoting Ellis v. England, 432 F.3d 1321, 1326 (11th Cir. 2005))

[4] Confusingly, the rest of Mr. Butler's pleading provides ample allegations of the Commissioner doing just that—processing his EEOC complaint.   (See, e.g., Doc.

- 6 -

retaliatory conduct . . . by the issuance of repeated Directives within a brief period [of] time that were not capable of being performed . . . ."   (Id. at ¶ 20.)   But he has not shown that, "based on a protected characteristic," he encountered harassment that was "sufficiently severe or pervasive to alter the conditions of [his] employment and create[d] an abusive working environment."   Miller v. Kenworth of Dothan, Inc., 277 F.3d 1269, 1275 (11th Cir. 2002) (quotation omitted).   First, as noted, Mr. Butler alleges that his request was temporarily approved but fails to allude that this approval terminated.   (See Doc. 59 at ¶ 30.)   Second, Mr. Butler does not tether the alleged harassment to his disabled status and the confused nature of his pleading prevents the Court from making any such inference.   For example, he states that "December 21, 2015 [was] the date of issuance of the first Directive." (Id. at ¶ 92 (formatting omitted).)   This, of course, predates both his reasonable accommodation request and EEOC activity in 2016.   (Id. at ¶¶ 30, 34.)

Even assuming this is a typographical error in that the first "Directive" was issued in December 2016, Mr. Butler fails to include sufficient factual allegations suggesting the "Directives" were severe or pervasive enough to alter the conditions of his employment.[5]   He does not allege who issued the "Directives," how often he

59 at ¶¶ 50, 125.)   For example, "[o]n 30, 2017," one of Mr. Butler's supervisors "emailed Plaintiff four (4) pages of written questions to submit to his attending physician."   (Id. at ¶ 38.)   The physician completed and returned the questions on "March 17, 2017 . . . as part of the EEOC 'interactive process.'"   (Id. at ¶ 176.)

[5] The Court hesitates to assume a typographical error because, elsewhere, Mr. Butler's allegations suggest the "Directives" may have begun as early as May 25, 2016.   (Doc. 59 at ¶ 155.)   This is yet another example of how Mr. Butler's operative pleading is of the shotgun variety.

received them, or how exactly they affected his duties as an ALJ.   The closest Mr. Butler gets to providing this information is by noting that the "Directives [were] to schedule additional hearings when Plaintiff was not deficient in that regard" and they "significantly detracted from the time Plaintiff had available to perform his . . . duties."   (Id. at ¶¶ 92, 111.)   These conclusory allegations do not support an inference that "the workplace [was] permeated with discriminatory intimidation, ridicule, and insult" resulting in "an environment that a reasonable person would find hostile or abusive."   Miller, 277 F.3d at 1275–76.

## III.   Count III

Finally, the Court turns to Mr. Butler's claim of "Retaliation (Discrete)" in Count III.   (Doc. 59 at 26.)   Candidly, it is extraordinarily difficult to determine what Mr. Butler is claiming here because, as the Commissioner aptly notes, the "allegations of this count are even harder to discern than in the previous counts, as they are equally verbose but more repetitive and bear no discernible topical or chronological organization."   (Doc. 60 at 10.)   Mr. Butler is alleging he was "subjected to discrete adverse employment actions motivated by retaliatory intent" for requesting a reasonable accommodation and filing an EEOC complaint.   (See Doc. 59 at ¶ 165.)

A prima facie case of retaliation requires the employee to show that: (1) he engaged in statutorily protected activity; (2) he suffered an adverse employment action; and (3) he established a causal link between the protected activity and the adverse action.   Brown v. Ala. Dep't of Transp., 597 F.3d 1160, 1181 (11th Cir.

2010) (quotation omitted).   Notably, "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse," meaning "it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination."   Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006) (quotation omitted).

Here, Mr. Butler identifies the following allegedly adverse employment actions: (a) the mishandling of his EEOC complaint (see, e.g., Doc. 59 at ¶¶ 128, 130); (b) initiating the removal proceedings in the MSPB action resulting in Mr. Butler being placed on administrative leave (id. at ¶ 140); and (c) his reasonable accommodation request not being considered "in good faith" (id. at ¶ 143).   But Mr. Butler fails to plausibly allege that his reasonable accommodation request and the Commissioner's treatment of his EEOC complaint were materially adverse employment actions.   Ignoring the SSA's handling of these events as detailed above—largely in Mr. Butler's favor—he has not shown how the Commissioner's actions would dissuade a reasonable worker from pursuing an EEOC complaint.

To illustrate, Mr. Butler contacted those in charge of investigating his EEOC complaint and expressed his frustration that they were the same individuals who were pursuing the disciplinary proceedings against him.   (See id. at ¶ 134.)   That the personnel may have overlapped, without more, fails to suggest an adverse consequence.   This is particularly true where, as here, the overlap did not dissuade Mr. Butler from vindicating his EEOC rights.   See Shannon v. Postmaster Gen. of U.S. Post. Serv., 335 F. App'x 21, 27 (11th Cir. 2009) ("Moreover, [the plaintiff] filed

his last two complaints after the alleged adverse actions, thus casting further doubt on whether these actions are of the sort that might have dissuaded a reasonable worker from making . . . a charge of discrimination." (quotation omitted)); cf. Tarmas v. Sec'y of Navy, 433 F. App'x 754, 763 (11th Cir. 2011) (holding the plaintiff failed to satisfy the prima facie case of Title VII retaliation by failing to show that "email citing poor job performance was a materially adverse action" that dissuaded the plaintiff "from filing and pursuing his discrimination complaint"). To the contrary, Mr. Butler continued to pursue his workplace grievances notwithstanding this overlap.

In a similar vein, the scattershot nature of Mr. Butler's allegations in Count III prevents the Court from inferring a causal connection between the protected activity and any adverse consequence.   "In order to show the two things were not entirely unrelated, the plaintiff must generally show that the decision maker was aware of the protected conduct at the time of the adverse employment action." Goldsmith v. Bagby Elevator Co., 513 F.3d 1261, 1278 (11th Cir. 2008).   He states that "[a]t least by October 4, 2016, Meeka Savage Drayton, SAA, OGC, agency disciplinary and defense counsel, was involved in assisting and advising SSA and OHO managers with respect to investigation and processing of Plaintiff's EEOC complaints."   (Doc. 59 at ¶ 124.)   Yet Mr. Butler alleges he did not begin the EEOC complaint process until November 29, 2016 at the earliest.   (Id. at ¶ 34.)[6]

---

[6] Elsewhere, he alleges he "initiated a formal EEOC complaint that was active and being processed" on "March 13, 2017."   (Doc. 59 at ¶ 180.)

Moreover, the "first draft of the MSPB-II removal complaint was completed" "[b]y at least February 22, 2017," which was four days <u>before</u> Mr. Butler emailed SSA supervisors complaining about the overlap in personnel handling his EEOC complaint.   (<u>Id.</u> at ¶¶ 131–34.)   This would also predate the recommendation of Mr. Butler's physician that he "restrict his physical presence at the Fort Myers Hearing Office" in support of his telework request.   (<u>Id.</u> at ¶ 150.)   And, as a final perplexing example, Mr. Butler alleges the complaint resulting in his being placed on administrative leave was filed on May 3, 2017.   (<u>Id.</u> at ¶ 180.)   The SSA "approved the final draft" on "April 17, 2017."   (<u>Id.</u> at ¶ 154.)   Yet the "SSA accepted Plaintiff's EEOC Formal Complaint" on "April 19, 2017"—two days after the draft was finalized.   (<u>Id.</u> at ¶ 155.)

At bottom, this fourth iteration of the complaint is still incomprehensible. Mr. Butler's inability to set forth even a somewhat coherent chronology of events has impeded the Court's ability to decipher his allegations and determine if, for example, the element of causation to establish a prima facie case exists on the face of the operative pleading.   From what the Court can discern of the clearer but nonetheless threadbare allegations in his pleading, Mr. Butler still fails to plausibly allege that he was dissuaded from pursuing his rights by the identified actions of the Commissioner.

## CONCLUSION

For these reasons, Mr. Butler's Third Amended Complaint (Doc. 59) constitutes a shotgun pleading and, even the Court's best, but failed, attempts to

decipher the allegations have yielded the inescapable conclusion that the allegations fail to plausibly state a claim of retaliation or harassment.

Accordingly, given the Court's prior admonishment (Doc. 58 at 13) and Mr. Butler's prior opportunities to amend the complaint to conform with the Federal Rules of Civil Procedure, this case is **DISMISSED with prejudice**.   The Clerk is **DIRECTED** to enter judgment accordingly, terminate all pending deadlines and motions, and close the file.

**ORDERED** at Fort Myers, Florida, on July 11, 2022

**JOHN L. BADALAMENTI**
UNITED STATES DISTRICT JUDGE